FILED by _____ D.C.

ELECTRONIC

**JAN. 03, 2008**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**08-20011-CV-SEITZ/MCALILEY**

HARVEY D. WOLINETZ, PARK NATIONAL
CAPITAL FUNDING, LLC, PARK NATIONAL
MORTGAGE SERVICING, H.D.W. 2005, LLC
H&N ASSOCIATES, ARETZ ASSOCIATES,
H.D.W. 2005 FOREST, LLC, H.D.W. 2005
NEW CASTLE, LLC and H.D.W. 2005
EDGEWATER, LLC,

     Plaintiffs,

v.

ELIYAHU WEINSTEIN, RIVKA BICHLER,
SIMCHA SHAIN, ELANA SHAIN, MICHAEL
GINDI, BARBARA GINDI, NEW CEDAR
HOLDINGS, LLC, OCEAN REALTY 101, LLC,
PINE PROJECTS, LLC and NH-K MEMPHIS, LLC,

    Defendants.

_____/

## COMPLAINT

Plaintiffs, Harvey D. Wolinetz ("Mr. Wolinetz"), Park National Capital Funding

LLC ("Park National"), Park National Mortgage Servicing, H.D.W. 2005, LLC ("HDW

2005"), H&N Associates, Aretz Associates, H.D.W. 2005 Forest, LLC ("HDW 2005

Forest"), H.D.W. 2005 New Castle, LLC ("HDW 2005 New Castle") and H.D.W. 2005

Edgewater, LLC ("HDW 2005 Edgewater"), sue Defendants, Eliyahu Weinstein a/k/a Eli

Weinstein ("Weinstein"), Rivka Bichler, Simcha Shain ("Shain"), Elana Shain, Michael

Gindi ("Gindi"), Barbara Gindi, New Cedar Holdings, LLC ("New Cedar"), Ocean

Realty 101, LLC ("Ocean Realty"), Pine Projects, LLC and NH-K Memphis, LLC ("NH-

K"), for fraud, RICO, breach of fiduciary duty, breach of contract, conversion,

constructive trust, unjust enrichment, promissory estoppel, civil conspiracy and equitable accounting and seek damages and injunctive relief, and in support allege:

## PARTIES

1.    Plaintiff Mr. Wolinetz is a resident of the State of Florida.

2.    Plaintiff Park National is a New York limited liability company with its principal place of business in New York, which is owned and controlled by Mr. Wolinetz. Park National also conducts business under the name Park National Mortgage Servicing.

3.    Plaintiff H&N Associates is a sole-proprietorship with its principal place of business in New York, which is wholly owned and controlled by Mr. Wolinetz.

4.    Plaintiff Aretz Associates is a New York partnership with its principal place of business in New York, which is 20% owned by Mr. Wolinetz.

5.    Plaintiff HDW 2005 is a New York limited liability company with its principal place of business in New York, which is owned and controlled by Mr. Wolinetz.

6.    Plaintiff HDW 2005 Forest is a New York limited liability company with its principal place of business in New York, which is owned and controlled by Mr. Wolinetz.

7.    Plaintiff HDW 2005 Edgewater is a sole-proprietorship with its principal place of business in Florida, which is wholly owned and controlled by Mr. Wolinetz.

8.    Plaintiff HDW 2005 New Castle is a sole-proprietorship with its principal place of business in New York, which is wholly owned and controlled by Mr. Wolinetz.

9.    Defendant Weinstein is a resident of the State of New Jersey.

2

10.     Defendant Rivka Bichler a/k/a Rivky Weinstein is a resident of the State of New Jersey.

11.     Defendant Shain a/k/a Sim Shain is a resident of the State of New Jersey.

12.     Defendant Elana Shain is a resident of the State of New Jersey.

13.     Defendant Gindi is a resident of the State of New Jersey.

14.     Defendant Barbara Gindi is a resident of the State of New Jersey.

15.     Defendant New Cedar is a New Jersey limited liability company with its principal place of business in New Jersey, which is owned and controlled by Weinstein and Shain.

16.     Defendant Ocean Realty is a New Jersey limited liability company with its principal place of business in New Jersey, which is owned and controlled by Weinstein.

17.     Defendant Pine Projects is a New Jersey limited liability company with its principal place of business in New Jersey, which is owned and controlled by Weinstein and Shain.

18.     Defendant NH-K Memphis, LLC is a Delaware limited liability company with its principal place of business in New Jersey, which is owned and controlled by Weinstein, Gindi and Shain.

## JURISDICTION AND VENUE

19.     Jurisdiction in the District Court for the Southern District of Florida is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1332(a) because all Plaintiffs are New York and Florida residents and Defendants are New Jersey and Delaware residents.

20.     Venue in this District Court is proper pursuant to 28 U.S.C. §1391(a)(2), as it is the judicial district in which (i) Defendants engaged in tortious conduct; (ii)

3

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

Plaintiff Mr. Wolinetz resides;  and (iii) certain of the property that is the subject of the action is situated.

## FACTS COMMON TO ALL CLAIMS

21.     Defendants orchestrated a fraudulent scheme through which they defrauded Mr. Wolinetz of at least $78.5 million by making false representations that Plaintiffs would be provided an interest in at least 12 different properties located in Florida, New York, New Jersey, Tennessee, Georgia and Pennsylvania.   Instead, Plaintiffs' funds were improperly used, converted and used for Defendants' own gain leaving Plaintiffs out more than $78 million without any meaningful interest in the properties.  The properties ("Properties") at issue are:

- Approximately 6,275 acres in 3 parcels of land in Volusia County, Florida ("Edgewater");
- A shopping plaza containing a dark lease Kroegers Supermarket located in Atlanta, Georgia ("Kroegers");
- 2650 Ellwood City New Castle Road, Shanango Township, Lawrence County, Pennsylvania ("New Castle");
- Commercial property located at 2027 Flatbush Avenue, Brooklyn, New York ("Flatbush");
- the Seagull Shopping Center at 1328 River Avenue, Lakewood, New Jersey ("Seagull");
- Two vacant lots located at Cedarbridge and New Hampshire Avenues, Lakewood, New Jersey, ("New Cedar Plaza");
- Two adjacent residential lots at 555 Joe Parker Boulevard, Lakewood, New Jersey ("Parker Blvd");
- 75 Prospect Avenue, East Orange, New Jersey ("Prospect Ave");
- 9-23 Berkeley Terrace and 794 Grove Street, Irvington, New Jersey ("Berkeley Terrace");
- 160-166 Ellis Avenue a/k/a 760-780 Springfield Avenue, Irvington, New Jersey ("Ellis Ave");
- Kimball Cabana Apartments located at 2856 Kimball Avenue, Memphis, Tennessee ("Kimball Cabana"); and
- New Horizon Apartments located at 3619 Kingsgate Drive, Memphis, Tennessee ("New Horizon").

4

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

Upon information and belief, Plaintiffs' funds were improperly diverted and used to purchase various additional properties.

22.     Weinstein and Mr. Wolinetz are both members of an Orthodox Jewish community.  Members of the community believe that a man's honor is his most valuable possession and a man's word is as good as any written contract.  As a result, business is often transacted without any documentation or through simple letter agreements prepared by the parties themselves.   Weinstein exploited that belief system to procure Mr. Wolinetz' trust and defrauded Plaintiffs from early 2005 to date, keeping the fraud going with a series of misrepresentations.

23.     Specifically, Weinstein engaged in a continuous game of stealing from Plaintiffs by lying about purchases, lying about property values, lying about ownership, lying about debt, lying about mortgage positions, lying about development of property and continuing the lies in order to steal more and more money from Plaintiffs and others. In fact, Weinstein admitted that he is "in the business of lying."

24.     Based on their religious affiliations, Mr. Wolinetz reposed confidence and trust in Weinstein to guide and inform him with respect to real estate projects and Weinstein accepted his trust. As a result, Defendant Weinstein and Plaintiff Mr. Wolinetz had an implied fiduciary relationship pursuant to which Weinstein owed Mr. Wolinetz a fiduciary duty.

### **FLORIDA**

25.     From September 9, 2005, through February 6, 2006, Weinstein engaged a scheme, through Pine Projects, to obtain $37.5 million from Plaintiffs Park National, H&N Associates, Aretz Associates, and Park National Mortgage Servicing.

5

26.     Specifically, Weinstein requested a loan from the above Plaintiffs at 15% interest allegedly for the purpose of purchasing the Edgewater property. Weinstein stated that Plaintiffs would be repaid upon resale or disposition of the property. The above-referenced Plaintiffs have provided the requested funds but never received verification that any property was actually purchased. Weinstein has since told Mr. Wolinetz that he purchased the Edgewater property, using his entity, Edgewater 55, LLC, and then resold the property to a third party without Plaintiffs' knowledge or consent and without distribution of principal or profits to Plaintiffs.

27.     Weinstein has also stated that Plaintiffs' principal was reinvested in the purchase of other properties owned by Adar Developers LLP and located in Baker County, Florida. Despite repeated requests to Weinstein, Plaintiffs have not received any records of these properties' location, purchase price, financing, etc. and Weinstein has refused to turn over any information or the funds.

28.     Amram Adar, CEO of Adar Developers, has represented to Mr. Wolinetz that Weinstein did in fact invest funds with his company to purchase land in Baker County, Florida. While Plaintiffs do not know the location of these parcels, they have determined from information on Adar Developers' website that the developer owns at least 2 parcels of land in Baker County, Florida.

29.     In furtherance of his game of "hide the ball", on January 21, 2006, Weinstein amended the Operating Agreement for Edgewater 55, LLC to transfer all of his interests in that company to HDW 2005 Edgewater. At the time of the transfer, however, the membership interest was worthless because Weinstein had either never held property

in that entity or had already sold the company's only asset – the Edgewater property – and invested the proceeds into property owned by Adar Developers LLP.

30.     In sum, Plaintiffs believe that Plaintiffs' funds were diverted without authorization to various other properties owned by Defendants or used by Weinstein for personal purposes.  In fact, at the time of the payment of funds by Plaintiffs to Weinstein, Weinstein had no intention of repaying the funds.

31.     To keep his scheme going, in light of Mr. Wolinetz' demand for records and payment of the $37.5 million loan, Weinstein told Mr. Wolinetz that he would transfer $14,436,227 of equity from the Edgewater land deal to the One Flagler office building.  At best, the equity interest could be valued at $6.5 million.  Weinstein also assigned his interests in a property located at 230 S.W. 3rd Street, Miami, Florida as additional collateral for the $37.5 million loan.  However, such interest is worthless.

32.     Despite the transfer of equity and the disposition of the membership interest for One Flagler Holdings LLC, Plaintiffs are still owed, at least, $31.5 million plus interest on the $37.5 million loan.

## ATLANTA, GEORGIA

33.     On September 1, 2005, Plaintiff Park National Mortgage Servicing lent Defendant Pine Projects $5.4 million based on Weinstein's representation that he would use the funds to finance the purchase of a dark lease[1] Kroegers shopping center.  At the time he requested the loan, Weinstein had no intention of repaying it.

34.     Mr. Wolinetz does not know whether the Kroegers shopping center was ever purchased or whether Weinstein diverted the funds to other projects.  Mr. Wolinetz

---

[1] The term "dark lease" refers to a property which was leased to a business which ceased doing business (i.e., went dark).

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

has repeatedly asked for documentation regarding the purchase of the Kroegers shopping center but Weinstein has refused to provide any information.

## LAWRENCE COUNTY, PENNSYLVANIA

35.     In the weeks preceding March 21, 2005, Weinstein approached Mr. Wolinetz seeking a loan of $1.4 million for the purchase of vacant property in New Castle, Pennsylvania.  Weinstein falsely represented to Wolinetz that the funds would be used to purchase the New Castle property.  AM OBR LP, an entity purportedly owned by Weinstein, and HDW 2005 New Castle entered into an agreement, dated March 7, 2005, for repayment of the $1.4 million loan at a 15% interest rate.

36.     Weinstein further misrepresented that he was purchasing the New Castle property through AM OBR LP.  AM OBR LP, however, was to convey all of its membership interest to HDW 2005 New Castle in exchange for the $1.4 million loan which interest would be returned upon repayment of the debt.  In addition, HDW 2005 New Castle was to receive a 5% interest in the profits earned on the property after all mortgage, taxes and expenses had been paid in full.

37.     In reliance on all of Weinstein's misrepresentations, on March 21, 2005, Plaintiff Park National provided the $1.4 million to Defendant Pine Projects.  Weinstein, however, had no intention of complying with any of the terms and conditions of the deal, and in fact, he did not even plan to purchase the New Castle property.

38.     New Castle was never purchased. Weinstein kept the money and converted it for his own use.

8

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

39.     Upon information and belief, the funds were used to finance other real estate projects and to purchase other properties owned by Defendants without Plaintiffs' knowledge or consent.

## OCEAN COUNTY, NEW JERSEY

40.     From May through August 2005, Weinstein approached Mr. Wolinetz on several occasions seeking financing for the purchase of certain properties located in Ocean County, New Jersey.

### A.     SEAGULL SHOPPING CENTER

41.     On or around May 2005, Weinstein approached Mr. Wolinetz and requested that he finance Defendant Ocean Realty's purchase of the Seagull for $10.7 million.   Between May 11, 2005 and May 20, 2005, Plaintiffs Mr. Wolinetz, Park National, and H&N Associates loaned $6,050,000, at a yearly interest rate of 15%, to Pine Projects for the benefit of Ocean Realty. Prior to making the loan, Weinstein represented that Mr. Wolinetz would have a mortgage on Seagull and the loan would be fully repaid by May 10, 2006.  In accordance with Weinstein's representations, Ocean Realty executed a mortgage and a note in favor of Park National.  Weinstein, once again, had no intention of performing or repaying Plaintiffs.

42.     On July 28, 2006, Ocean Realty obtained a first mortgage from Independence Community Bank for $9,280,000 secured by a mortgage on Seagull and an assignment of leases and rents. The proceeds of that loan were not used to pay off Plaintiffs' loan and the loan remains unpaid.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

43.     In fact, Defendants have borrowed $15,330,000 against Seagull which was purchased for $10.7 million. This excessive borrowing has eliminated Plaintiffs' ability to recover their loan through liquidation of the property.

44.     In September 2007, Defendants ceased making interest payments of the loan. The amount outstanding on this loan is $6,050,000.

### New Cedar Plaza

45.     In the weeks proceeding June 1, 2005, Weinstein approached Mr. Wolinetz and requested a loan of $9 million for the purchase of lots 1.02 and 2.02 of the New Cedar Plaza. On June 1, 2005, Plaintiff Park National loaned Weinstein $9 million at an interest rate of 13% set to mature on June 27, 2007. Again, Weinstein never intended to perform and used only a portion of the $9 million to purchase the New Cedar Plaza and converted the remainder for his own use.

46.     Specifically, the New Cedar Plaza, comprised of the two lots, was purchased by New Cedar, a company owned by Defendants Weinstein, Shain and Yisroel M. Pollak, in two transactions from two different sellers.

47.     Upon information and belief, New Cedar purchased lot 1.02 for $6.5 million. It paid $1.5 million in cash and used seller-financing for the rest. As a result, New Cedar provided a first mortgage to the sellers Stamos & Sommers LLC, dated September 28, 2005, for $5 million.

48.     Thereafter, on January 26, 2006, New Cedar purchased lot 2.02 for $3,149,899.47. New Cedar then obtained new loans and provided mortgages, secured by both lots 1.02 and 2.02, from Manchester Capital, LLC on February 3, 2006, for

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

$2,355,000, from Christian C. Romandetti on June 30, 2006, for $3 million, and from Moishe Freund on April 30, 2007, for $4,640,000.

49.     As a result, Defendants obtained $14,995,000 in financing (including the $9 million from Mr. Wolinetz) on property purchased for $9,649,899.47.

50.     In June 2007, the $9 million loan matured and Defendants failed to repay it.

### B.     PARKER BLVD

51.     On July 27, 2005, Weinstein, as an individual, purchased Parker Blvd, comprised of a single family dwelling and vacant lot, for $770,000.  Weinstein falsely represented to Plaintiff H&N Associates that he needed a loan and that such funds would be used to finance the purchase and development of Parker Blvd.  Weinstein also stated that the loan would be secured by Parker Blvd and the improvements thereon. Thereafter, Weinstein obtained a loan from Plaintiff H&N Associates for $3,550,000 at a 12% interest rate payable monthly.

52.     At the time of requesting the loan from Plaintiff H&N Associates, Weinstein had no intention to purchase or develop Parker Blvd with the borrowed funds. Instead, he kept Plaintiff H&N Associates' funds and converted them for his own use.

53.     Then, without Plaintiffs knowledge or consent, on August 18, 2005, Weinstein obtained a loan from First Financial Equities, Inc. for $423,000 and secured it with a first mortgage on Parker Blvd.  Again, on August 29, 2005, Weinstein obtained a second mortgage for himself, Rivka Bichler (his wife), Benjamin Gelbhauer, Simcha Shain and Elana Shain from Scott Siegelman for $462,843.69 secured by Parker Blvd.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

54.    In sum, Parker Blvd was not improved and has a debt obligation of $4,435,843.69.

## BERKELEY TOWNSHIP, NEW JERSEY

55.    Prior to November 21, 2005, Weinstein approached Mr. Wolinetz and solicited a loan for $8 million at an interest rate of 14% payable monthly for the purchase of a building located in Berkeley Township, New Jersey.  Weinstein falsely represented that he had obtained financing from Lehman Brothers and CU Business Capital LLC that would pay off the requested $8 million loan by January 4, 2006.  Weinstein falsely represented that he would also make a loan for $4.5 million payable monthly.  In addition, Weinstein promised Plantiffs a 40% equitable ownership in the building with Weinstein owning the remaining 60%.  In the event the loan was not repaid by the due date, the $8 million would earn interest at a rate of prime plus one percent payable monthly and the equitable ownership structure would change to Plaintiffs 66.6%, Weinstein 33.3%.

56.    In reliance on such representations, on or around November 21, 2005, Mr. Wolinetz loaned $8 million to finance the purchase of the building.

57.    Weinstein and Mr. Wolinetz entered into a letter agreement dated November 21, 2005, reflecting the terms of the foregoing loan.  Weinstein, however, never had any intention of using the $8 million loan in the purchase of a building.

58.    At a meeting between Mr. Wolinetz and Weinstein, in early June 2006, Weinstein disclosed that Mr. Wolinetz' $8 million loan had actually been diverted to other properties known as Prospect Ave, Berkeley Terrace and Ellis Ave rather than the agreed upon building or otherwise performing the obligations under the agreement.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

59.    Weinstein confessed that Prospect Ave was purchased for $5,150,000 on February 16, 2005, by Prospect Realty, which was solely-owned by Weinstein, and financed with a mortgage from Washington Mutual for $4 million.  Prospect Ave was then allegedly additionally funded using $3 million of the $8 million loan.  This property was financed for $1,850,000 more than its purchase price.

60.    Moreover, Berkeley Terrace was purchased for $7.6 million on October 28, 2005, by Berkeley Acquisitions, which was solely-owned by Defendant Gindi, and financed by two mortgages from Astoria Federal Mortgage Corp. one for $447,566 and one for $5.6 million.  That property was allegedly later additionally funded using $3 million of the Plaintiff's $8 million loan.  This property was financed for $1,447,566 more than its purchase price.

61.    Finally, Ellis Ave was purchased for $1,740,000 on April 27, 2004, by Ellis Equities, which was solely-owned by Weinstein, and financed with a mortgage from Citibank F.S.B. for $1.4 million.  It was allegedly later additionally funded using $2 million of the $8 million loan.  This property was financed for $1,660,000 more than its purchase price.

62.    At a June 6, 2006 meeting between Mr. Wolinetz and Weinstein, Mr. Wolinetz demanded repayment of his loan. Weinstein did not provide payment. Instead he told more lies, promising that he could turn the Prospect Ave property into a Co-Op creating a high return for all investors.  No such action was ever intended or performed. Weinstein further represented that he was attempting to obtain independent financing on all three properties from Washington Mutual in the amount of $17,500,000 for all three properties, cross-collateralized.

63.     In an effort to stall Mr. Wolinetz from exercising his legal rights, Weinstein also falsely stated that he would use his equity in other projects or personal funds to pay the shortfall between the mortgage proceeds and Plaintiff's loan. No such payments have been made. Thus, $7.4 million plus interest is still outstanding on the $8 million loan.

64.     Under pressure to offer some compensation for breach of the letter agreement, Weinstein provided Mr. Wolinetz with an amendment to the operating agreement for Prospect Realty in which he assigned all of his shares in Prospect Realty and Ellis Equities to HDW 2005 declaring that Weinstein had no rights or shares to those companies leaving HDW 2005 as the sole member of both companies. Similarly, on that same date, Defendant Gindi assigned all of his shares in Berkeley Acquisitions to HDW 2005. (Gindi has now filed an action in Superior Court in New Jersey claiming that the assignment of membership interests was forged by Weinstein.).

65.     In November of 2007, Mr. Wolinetz updated the corporate filings for Prospect Realty, Ellis Equities and Berkeley Acquisitions to reflect the transfer of 100% of their interests to HDW 2005. Mr. Wolinetz further secured his interest in the Prospect Ave, Ellis Ave and Berkley Terrace properties by transferring their titles to HDW 2005.

66.     After transferring 100% of the ownership interest to HDW 2005, Weinstein fraudulently sold an "interest" in Prospect Ave to two separate purchasers in two unrecorded sales and collected the proceeds. And, he then fraudulently sold an "ownership interest" in Ellis Ave for $1,810,000 and kept the net proceeds. Both sales occurred without Mr. Wolinetz' knowledge or consent and without any distribution to

14

Plaintiffs. Prospect Ave, Ellis Ave and Berkley Terrace are highly leveraged and their ownership may be challenged.

67.     In sum, Plaintiffs are owed a total of $7.4 million plus interest on the $8 million loan.

## BROOKLYN, NEW YORK

68.     Prior to July 11, 2005, Weinstein approached Mr. Wolinetz and requested a loan in the amount of $3,960,000 for the purchase of the Flatbush property, which was formerly a car dealership. On or around July 11, 2005, Weinstein received a loan from Mr. Wolinetz in the amount of $3,960,000 at an interest rate of 15% purportedly for the purpose of purchasing the Flatbush property. The deed shows that the purchase price was $3,400,000, leaving $560,000 unaccounted for. On information and belief, such additional funds were improperly converted to Weinstein for his own purposes. Weinstein subsequently paid down $2,485,000 of the loan but the principal balance of $1,475,000 remains outstanding and that loan is in default. Subsequently, Weinstein granted Heshy Stern a $2.5 million first mortgage on the property.

69.     In sum, Mr. Wolinetz has suffered damages in the amount of the $1,475,000 loan plus interest due.

## MEMPHIS, TENNESSEE

70.     On or around October 2005, Weinstein approached Mr. Wolinetz seeking financing for the purchase of the Kimball Cabana and New Horizon apartment complexes in Memphis, Tennessee. Weinstein represented that HDW 2005 Forest would receive interest at a rate of 15% and a 50% equity ownership in the project secured by a pledge agreement, dated November 1, 2005, pursuant to which Weinstein, as managing member,

pledged all of his interest in Kimball Cabana and New Horizon to HDW 2005 Forest as collateral.

71.     Mr. Wolinetz was lured into investing in these Memphis properties by Weinstein's assurances that he would quickly "flip" the apartment complexes to a purchaser named Joseph Hecht, with whom he already had a sale contract and escrowed deposit of $5.5 million held by Benjamin Hager, Esq., Weinstein's attorney in New York. Mr. Hager confirmed that he was holding this deposit and that $2,750,000 would be released to the sellers in a week and the remainder in two to three weeks. Weinstein and Hager purposefully omitted the fact that the sale was contingent on the buyer obtaining 90-95% financing on the appraised value. When these conditions were not met, the full deposit was returned to Mr. Hecht and the property was not sold.  Mr. Wolinetz was not informed of the contingency, the returned deposit, or the failed sale to Mr. Hecht for several months during which he persistently questioned Weinstein regarding the status of the sale.

72.     At the time of making false representations to Mr. Wolinetz to induce Plaintiffs to lend $11,220,000, Weinstein had no intention of performing his obligations.

73.     In March 2006, in an effort to prevent Mr. Wolinetz from foreclosing on the LLC membership interest, Weinstein lied to Mr. Wolinetz again and stated that in two weeks Mr. Hecht would have a bank commitment that would pay Mr. Wolinetz completely. Weinstein further promised that if the bank commitment only provided 85% financing, the investors would take commercial paper for the other 5% in order to complete the sale.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

74.     At a meeting between Mr. Wolinetz and Weinstein on June 6, 2006, the properties still had not sold and Mr. Wolinetz demanded repayment of the loan. Weinstein agreed to Mr. Wolinetz' demand and promised that if the loan was not paid off by June 30, 2006, the equity ownership in the deal would change to: Weinstein 33 1/3%, Mr. Wolinetz 66 2/3% and, in the meantime, the $11,220,000 million loan would continue to collect monthly interest at 15.25%.

75.     Pursuant to amendments to the operating agreements for Kimball Cabana and New Horizon executed in October 2006, the property ownership was structured as follows: New Horizon and Kimball Cabana (equally-owned by Weinstein, Shain and Gindi) each owned its respective apartment complex; the three members of New Horizon and Kimball Cabana all contributed 100% of their interests in the companies to NH-K so that Weinstein, Shain and Gindi each owned 33 1/3% of NH-K.

76.     On November 30, 2006, New Horizon purchased the New Horizon apartments for $34,560,000 with a mortgage from First Financial Equities Commercial LLC for $30.5 million. On the same date, Kimball Cabana purchased the Kimball Cabana apartments for $8,640,000 with a mortgage from First Financial Equities Commercial LLC for $5,650,000. The Seller is still owed $5.6 million and is suing Weinstein, New Horizon and Kimball Cabana for recovery of the outstanding portion of the purchase price plus interest.

77.     Despite Weinstein's many promises, the properties have not been re-sold. The apartment complexes are currently horribly mismanaged and only 40% occupied. They must be at 80% occupancy to break even after making mortgage payments and covering operating expenses. The management company has resigned after harassment

from Defendant Gindi seeking the release of operating funds for use to cover mortgage and insurance expenses. Interest payments have not been made in two months. Thus, the loans are in default with an outstanding amount of $11,220,000 plus interest due.

## PROMISSORY NOTES

78.     Mr. Wolinetz and/or Park National lent money to Weinstein on various occasions for purposes other than funding property purchases or development. These loans were memorialized in various promissory notes.

79.     On July 12, 2006, Weinstein executed a promissory note in favor of Park National promising repayment of $2.5 million loan at an interest rate of 12%. The outstanding amount of this loan is $1,725,000 plus accrued interest.

80.     Then on June 18, 2007, Weinstein executed a promissory note in favor of Park National promising repayment for a loan for $1.5 million at an interest rate of 15%. These funds had previously been lent by Plaintiff H&N Associates to Center 86, LLC, for Gindi's benefit. Defendant Gindi then turned around and transferred the $1.5 million to Weinstein. Neither Defendant has made any principal payments on that loan. Therefore, the current balance on that loan is $1.5 million.

81.     All conditions precedent for bringing this action have been met, performed or waived.

### CLAIMS FOR RELIEF

#### COUNT I
#### EQUITABLE ACCOUNTING

82.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

83.     The contract demands between Plaintiffs and Defendants involve extensive and complicated accounts and transactions.

84.     There is no remedy at law that would resolve this issue as fully, adequately or expeditiously as an accounting.

WHEREFORE, Plaintiffs request that the Court order Defendants to turn over all financial books and records for the period January 2005 – to date to a forensic accountant for a full accounting and otherwise provide an accounting as to all funds and properties described above or to any entity into which Plaintiffs' funds were transferred and, awarding Plaintiffs their costs and such other and further relief as this Court deems just and proper.

## COUNT II
### FRAUD – WEINSTEIN, GINDI, PINE PROJECTS &N-HK

85.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

86.     Defendants Weinstein, Gindi and Pine Projects, New Cedar and NH-K through its agent Weinstein made fraudulent misrepresentations and/or omissions of material fact.

87.     Defendants knew or should have known that their statements were false when made.

88.     Defendants intended to deceive Plaintiffs with the misrepresentations and omissions and induce Plaintiffs to act to their detriment.

89.     Plaintiffs had no knowledge of the misrepresentations and omissions and reasonably relied on the Defendants' misrepresentations.

90.     As a result, Plaintiffs were damaged.

19

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

WHEREFORE, Plaintiffs request that the Court award them compensatory and punitive damages, costs and such other and further relief as this Court deems just and proper.

## COUNT III
## CIVIL RICO

91.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

92.     Defendants violated 18 U.S.C. §§ 1962(a) and 1962(d) by (i) receiving income from a pattern of racketeering, (ii) using such income to acquire and/or operate an interest in an enterprise, (iii) where such enterprise affects interstate and foreign commerce.

93.     As described above, numerous Defendants engaged in two or more predicate acts within ten years which constitute the Defendants' pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(a) and 1962(d). The scheme to fraudulently obtain and convert funds from Plaintiffs was perpetrated through wire fraud violations under 18 U.S.C. § 1343 and mail fraud violations under 18 U.S.C. § 1341. Specifically, the Defendants also violated the National Stolen Property Act (18 U.S.C. § 2314). Specifically, the misrepresentations described-above were made through telephone calls, e-mail and mail correspondence.

94.     Defendant Weinstein was the mastermind of the schemes set forth above and effectuated their activities by conspiring with Defendants Shain and Gindi to drain funds from Plaintiffs.  Weinstein structured transactions in which over $78.5 million dollars were taken from Plaintiffs and transferred into the entities which owned the

20

Properties as well as other assets, entities owned and controlled by Defendants. Weinstein also directed the wrongful activities of the other Defendants.

95.     Defendants' various real estate investment companies comprise an enterprise under the federal RICO statutes.

96.     Thus, Defendants invested and used income and proceeds generated from a pattern of racketeering activity in the operation of an enterprise in violation of 18 U.S.C. §§ 1962(a) and 1962(d).

97.     Defendants' enterprise involves the purchase of properties in at least six different states with funds and correspondence traveling interstate between and among Defendants and Plaintiffs such properties also are commercial properties which affect interstate commerce. As a result, a nexus with interstate commerce is present.

98.     Plaintiffs were directly injured by Defendants' violations of the federal RICO statute and the predicate acts. Specifically, Plaintiffs were injured directly by Defendants' fraudulent inducement to loan moneys that were used to fund Defendants' real estate investment enterprise.

99.     As a result of those injuries, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs request that the Court award Plaintiffs compensatory and treble damages, costs and such other and further relief as this Court deems just and proper.

### COUNT IV
### BREACH OF FIDUCIARY DUTY AGAINST WEINSTEIN

100.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

21

101. During the course of their two-year business dealings, Mr. Wolintez reposed confidence in Weinstein to guide and inform him with respect to real estate projects and Weinstein accepted his trust. Mr. Wolinetz' trust was also founded on the fact that both men come from the same Orthodox Jewish community. Weinstein also owed a fiduciary duty to Mr. Wolinetz as a co-member in certain entities as described above.

102. As a result, Defendant Weinstein and Plaintiff Mr. Wolinetz had an implied fiduciary relationship pursuant to which Weinstein owed Mr. Wolinetz a fiduciary duty.

103. Pursuant to that fiduciary duty, Weinstein had a duty of loyalty, and was required to refrain from self-dealing and from taking unfair advantage. He was also required to disclose all material facts and act in Mr. Wolinetz' best interest.

104. Instead, Weinstein exploited Mr. Wolinetz' trust by defrauding him and the other Plaintiffs. Specifically Weinstein, made false representations about the terms and conditions of repayment of Mr. Wolinetz' loans and about the value of the Properties, which he provided as collateral for those loans.

105. In addition, Weinstein made omissions of material fact about the value and purchase price of certain properties and about the debt leveraged against the Properties or the ability to quickly resell those Properties, often causing Mr. Wolinetz to unknowingly accept a valueless security and/or ownership interest in such Properties in exchange for Plaintiffs' loans.

106. Accordingly, Weinstein breached his fiduciary duty causing Mr. Wolinetz to suffer damages.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

WHEREFORE, Plaintiffs request that the Court award Plaintiffs compensatory and punitive damages, costs and such other and further relief as this Court deems just and proper.

### COUNT V
### CONVERSION

107. Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

108. Defendants received Plaintiffs' funds based on false statements.

109. The funds were earmarked to fund the purchase of specific properties and were intended as loans secured by mortgages on specific properties. In addition, as an incentive to lend funds, Plaintiffs were often falsely promised an equity interest in the entity owning such Properties.

110. Defendants wrongfully exercised dominion and control over the funds.

111. Despite repeated requests, Defendants have refused to return the funds and have improperly converted them for their own use causing damage to Plaintiffs.

WHEREFORE, Plaintiffs request that the Court award them compensatory and punitive damages, their costs, and such other and further relief as this Court deems just and proper.

### COUNT VI
### CONSTRUCTIVE TRUST

112. Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81, 85-90 and 100-106 above as if set forth fully herein.

113. Certain Defendants owed a fiduciary duty to Plaintiffs as described above.

114. Defendants obtained $78.5 million from Plaintiffs by fraudulent means.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

115.    As a result of the fraud, a constructive trust was formed over the monies provided by Plaintiffs.

116.    Defendants would be inequitably enriched if they were allowed to keep Plaintiffs' funds and assets derived therefrom.

WHEREFORE, Plaintiffs request that the Court impose a constructive trust over the all of the Properties, accounts, assets and real property of Defendants and order such other and further relief as this Court deems just and proper.

## COUNT VII
### UNJUST ENRICHMENT

117.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

118.    Mr. Wolinetz directly or through the other Plaintiffs transferred $78.5 million to Defendants and thus conferred a benefit upon them.

119.    Weinstein or his companies voluntarily requested and received all such funds under false pretenses and improperly exercised dominion and control over those funds.

120.    Under the circumstances, it would be inequitable for Defendants to continue to retain Plaintiffs' funds and the properties or assets acquired therewith.

WHEREFORE, Plaintiffs request an award of damages, costs and such other and further relief as this Court deems just and proper.

## COUNT VIII
### BREACH OF CONTRACT

121.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

24

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

122.    Plaintiffs and Defendants entered into various contracts as described above.

123.    Those contracts are in the form of mortgage notes, promissory notes, pledge agreements, and signed letters acknowledging the terms and conditions of various transactions, including interest rates, ownership structure, and percentages of liability.

124.    Defendants breached the agreements by failing to repay the funds loaned and by failing to transfer various interests as described above.

125.    As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs request that the Court award them compensatory damages, pre-judgment interest, costs and such other and further relief as this Court deems just and proper.

## COUNT IX
### PROMISSORY ESTOPPEL

126.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81 above as if set forth fully herein.

127.    Defendants made promises to Plaintiffs, as set forth above, to induce them to invest in the Properties.

128.    Defendants should reasonably have expected that their promises would induce action by Plaintiffs.

129.    In fact, Plaintiffs reasonably relied the foregoing.

130.    Injustice can be avoided only by enforcement of Defendants' promises.

131.    Plaintiffs have sustained damages as a result of their reliance on Defendants' promises.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

WHEREFORE, Plaintiffs request that the Court award them damages, prejudgment interest, costs and such other and further relief as this Court deems just and proper.

## COUNT X
### CIVIL CONSPIRACY

132.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-140 above, except those contained in paragraphs 121-131, as if set forth fully herein.

133.    Defendants Gindi and Weinstein conspired with the common purpose of defrauding Mr. Wolinetz out funds which were intended to be invested in Berkeley Terrace, Forest Ave, the Memphis properties and the Florida properties.

134.    Defendant Gindi participated with Weinstein in making the false statements set forth above and otherwise withholding material information and acting in furtherance of the scheme to defraud Plaintiffs.

135.    Defendants Shain and Weinstein conspired with the common purpose of defrauding Mr. Wolinetz out of funds which were to be invested in Ellis Ave, New Cedar Plaza, Parker Road, the Memphis properties and the Florida properties.

136.    Weinstein, Gindi and Shain each committed overt acts in furtherance of their common purpose. Weinstein made many false statements regarding the value of the investment properties, the ability to flip them or obtain financing, and the terms and condition of purchase, all of which were reinforced and defended by Gindi and Shain in separate conversations with Mr. Wolinetz. Further, all three Defendants knowingly executed false documents which they did not intend to abide by. All three defendants received monies from the funds invested by Plaintiffs, all the while making it seem as

26

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

though the funds were legitimately being used to finance the purchase and development of the Berkeley Township, Ocean County, Staten Island, Memphis and Florida properties.

137.    As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs request that the Court award them damages, costs and such other and further relief as this Court deems just and proper.

**INJUNCTIVE RELIEF**

138.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-81, 85-90 and 100-106 as if set forth fully herein.

139.    As a result of the fraud, conversion, and breaches of fiduciary duties by Defendants, Plaintiffs request, on an emergency basis, that this Court enter a temporary restraining order against Defendants enjoining them from further encumbering, in any way, or transferring, selling or foreclosing on any of the Properties and/or all of Defendants' properties, assets and accounts held individually or jointly until a final determination with respect to Plaintiffs' interests in such property is made.  Plaintiffs further request that the Court enjoin all third parties from exercising any dominion or control, transferring, encumbering, or foreclosing on any of the Properties and/or all of Defendants' properties, assets and accounts held individually or jointly.

140.    Failure to grant a temporary restraining order while the Court adjudicates the many claims alleged herein will result in irreparable harm to Plaintiffs because Defendants will continue to transfer and encumber the Properties and their other assets, which were likely purchased with Plaintiffs' funds, leaving such Properties and assets over-leveraged or sold to third parties.

27

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

141.    Further, there is no adequate remedy at law available to Plaintiffs to stop Defendants continuing wrongs.

142.    Finally, a temporary restraining order will not negatively affect the public or any innocent third parties.

WHEREFORE, Plaintiffs request that the Court enter a temporary restraining order enjoining Defendants from taking any action to transfer, encumber or foreclose upon any of the Properties and/or all other properties, accounts and assets, wheresoever located, held by the Defendants individually or jointly.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Dated: January 3rd, 2008
       Miami, Florida

Respectfully submitted,

Melanie E. Damian, Esquire
Email: mdamian@dvllp.com
Florida Bar No. 0099392
DAMIAN & VALORI, LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305.371.3960
Facsimile:  305.371.3965
*Counsel for Plaintiffs*

28

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

%JS 44 ' (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HARVEY D. WOLINETZ, ET AL. | ELIYAHU WEINSTEIN, ET AL. |

**(b)** County of Residence of First Listed Plaintiff   MIAMI-DADE, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   OCEAN COUNTY, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

MELANIE DAMIAN, ESQ., DAMIAN & VALORI, LLP,
1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FL 33131
TELEPHONE: 305.371.3960

Attorneys (If Known)

UNKNOWN

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|

*Miami - 08CV 20011*  *DISTin Alley*

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☑ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☑ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☑ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☑ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

JAN

CLARENCE MADDOX
CLERK U.S. DIST CT
S.D. OF FLA MIAMI

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1  Original Proceeding   ☐ 2  Removed from State Court   ☐ 3  Re-filed- (see VI below)   ☐ 4  Reinstated or Reopened   ☐ 5  Transferred from another district (specify)   ☐ 6  Multidistrict Litigation   ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO
JUDGE                              DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
18 U.S.C. § 1962

LENGTH OF TRIAL via  15  days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
January 3, 2008

**FOR OFFICE USE ONLY**
AMOUNT $ 350.00  RECEIPT # 972516  JFP

01/03/08

JS 44 Reverse (Rev. 11/05)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

(d) Choose one County where Action Arose.

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled Copy of Order of Dismissal. (3)

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**VII.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.